ROBERT EARL DALTON D/B/A B. DALTON & COMPANY v. DAVID CAMP, NANCY J. MENIUS, AND MILLENNIUM COMMUNICATION CONCEPTS, INC.

No. 495PA99-2

(Filed 20 July 2001)

**1. Employer and Employee— breach of fiduciary duty—forming rival company**

The trial court properly granted summary judgment in favor of defendant Camp on a claim for breach of fiduciary duty arising from defendant leaving plaintiff's employment and starting a rival company, because plaintiff employer failed to establish facts supporting a breach of fiduciary duty when no evidence suggests that defendant's position in the workplace resulted in domination and influence over plaintiff.

**2. Employer and Employee— breach of loyalty—forming rival company**

The trial court properly granted summary judgment in favor of defendant Camp on a claim for breach of duty of loyalty arising from defendant leaving plaintiff's employment and starting a rival company, because plaintiff failed to establish that any independent tort for breach of duty of loyalty exists under our state law.

**3. Wrongful Interference— interference with prospective advantage—employee founding rival business**

The trial court properly granted summary judgment in favor of defendants Camp and MCC on a claim for tortious interference with prospective advantage arising from defendant Camp leaving

DALTON v. CAMP

[353 N.C. 647 (2001)]

plaintiff's employment and starting a rival business publishing employment newsletters, because: (1) there is no evidence that defendant Camp induced KFI into entering a contract; and (2) plaintiff employer offers no evidence showing that but for defendant Camp's alleged interference, a contract with KFI would have ensued.

**4. Unfair Trade Practices— employee founding rival business—no fiduciary relationship—no egregious or aggravating conduct**

The trial court properly granted summary judgment in favor of defendants Camp and MCC on a claim for unfair and deceptive trade practices under N.C.G.S. § 75-1.1 arising from defendant Camp leaving plaintiff's employment and starting a rival business, because: (1) defendant Camp did not have a fiduciary relationship with plaintiff employer when defendant's duties as a production manager for plaintiff were limited to those commonly associated with any employee; (2) defendant Camp did not serve his employer in the capacity of either a buyer or a seller, nor did he serve in any alternative capacity suggesting that his employment was such that it otherwise qualified as "in or affecting commerce"; and (3) there is no evidence of attendant circumstances to indicate that defendant Camp's conduct was especially egregious or aggravating.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 138 N.C. App. 201, 531 S.E.2d 258 (2000), affirming in part, reversing in part, and remanding for a new trial an order for summary judgment entered 13 July 1998 by Zimmerman, J., in Superior Court, Randolph County. This case was previously remanded by order of the Supreme Court of North Carolina for the Court of Appeals' reconsideration in light of *Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999). *Dalton v. Camp*, 135 N.C. App. 32, 519 S.E.2d 82 (1999). Heard in the Supreme Court 12 March 2001.

*Moser Schmidly Mason & Roose, by Stephen S. Schmidly; and Murchison, Taylor & Gibson, by Andrew K. McVey, for plaintiff-appellee.*

*Wyatt Early Harris & Wheeler, L.L.P., by William E. Wheeler, for defendant-appellants David Camp and Millennium Communication Concepts, Inc.*

*Moore & Van Allen, P.L.L.C., by George M. Teague, on behalf of North Carolina Citizens for Business and Industry, amicus curiae.*

ORR, Justice.

This case arises out of an employer's allegations of unfair competitive activity by former employees and a new corporation formed by them. Plaintiff Robert Earl Dalton d/b/a B. Dalton & Company ("Dalton") produced, under a thirty-six month contract, an employee newspaper for Klaussner Furniture Industries ("KFI"). Dalton hired defendant David Camp ("Camp") to produce the publication and subsequently hired Nancy Menius ("Menius") to assist in the production of the employee newspaper. Near the conclusion of the contract period, Dalton began negotiations with KFI to continue publication. After the contract had expired, Dalton continued to publish the employee newspaper without benefit of a contract while talks between the parties continued. During this period, Camp, who was contemplating leaving Dalton's employ, established a competing publications entity, Millennium Communication Concepts, Inc. ("MCC"), and discussed with KFI officials the possibility of replacing Dalton as publisher of KFI's employee newspaper. Soon thereafter, Camp entered into a contract with KFI to produce the newspaper. He resigned from Dalton's employment approximately two weeks later.

In the wake of Camp's resignation, Dalton sued Camp, Menius, and MCC for breach of the fiduciary duty of loyalty, conspiracy to appropriate customers, tortious interference with contract, interference with prospective advantage, and unfair and deceptive acts or practices under chapter 75 of the North Carolina General Statutes. The trial court first dismissed Dalton's claim for tortious interference with contract and subsequently granted Camp's motion for summary judgment against Dalton for the remaining claims. In its initial review of the case, the Court of Appeals held that the trial court had properly granted summary judgment for all defendants as to the claim for unfair and deceptive trade practices. As for the claim for breach of duty of loyalty, the Court of Appeals held that summary judgment was proper for defendant Menius and improper for defendant Camp. As for Dalton's claim of tortious interference with prospective advantage, the Court of Appeals again held that summary judgment was properly granted for defendant Menius and improperly granted for defendant Camp. *Dalton v. Camp*, 135 N.C. App. 32, 519 S.E.2d 82

(1999). After this Court remanded the case to the Court of Appeals for further review in light of, *inter alia,* our holding in *Sara Lee Corp. v. Carter,* 351 N.C. 27, 519 S.E.2d 308 (1999), the Court of Appeals ultimately concluded that summary judgment was properly granted for: (1) all claims against Menius, and (2) the conspiracy to appropriate customers claim against Camp and MCC. The court also held that summary judgment was improperly granted for: (1) the breach of duty of loyalty claim against Camp, (2) the interference with prospective advantage claim against Camp and MCC, and (3) the unfair and deceptive trade practices claim against Camp and MCC.

For the reasons set forth below, we hold that the trial court properly granted summary judgment for all applicable claims, and we reverse those portions of the Court of Appeals opinion that hold otherwise. Thus, in sum, none of plaintiff Dalton's claims survive.

I.

We begin our analysis with an examination of Dalton's first claim against Camp which, as described in Dalton's complaint, constituted a breach of fiduciary duty, including a duty of loyalty. From the outset, we note that Dalton argues this claim from two distinct vantage points. First, he alleges that Camp breached his fiduciary duty by being disloyal. *See Long v. Vertical Techs., Inc.,* 113 N.C. App. 598, 604, 439 S.E.2d 797, 802 (1994) (defining fiduciary duty as one requiring good faith, fair dealing, and loyalty). Second, he argues that a separate and distinct action for breach of duty of loyalty exists and that Camp's conduct constituted a breach of that duty. We disagree with both contentions, holding that Dalton has failed to establish: (1) facts supporting a breach of fiduciary duty, and (2) that any independent tort for breach of duty of loyalty exists under state law.

Prior to trial, the trial court granted defendants' motion for summary judgment as to all pending claims. Summary judgment is a device whereby judgment is rendered if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. N.C. R. Civ. P. 56(c); *accord Fordham v. Eason,* 351 N.C. 151, 159, 521 S.E.2d 701, 706 (1999). The rule is designed to eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim of a party is exposed. *Econo-Travel Motor Hotel Corp. v. Taylor,* 301 N.C. 200, 271 S.E.2d 54 (1980).

**DALTON v. CAMP**

[353 N.C. 647 (2001)]

When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. *Coats v. Jones,* 63 N.C. App. 151, 303 S.E.2d 655, *aff'd,* 309 N.C. 815, 309 S.E.2d 253 (1983). Moreover, the party moving for summary judgment bears the burden of establishing the lack of any triable issue. *Boudreau v. Baughman,* 322 N.C. 331, 368 S.E.2d 849 (1988).

Thus, the question before us is whether the Court of Appeals properly concluded that genuine issues of material fact existed as to Dalton's claims against Camp for breach of fiduciary duty and/or breach of duty of loyalty. We address the specifics of Dalton's arguments supporting the Court of Appeals decision in successive order.

**[1]** For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties. *Curl v. Key,* 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984); *Link v. Link,* 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971). Such a relationship has been broadly defined by this Court as one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . , [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other.*'" *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (quoting 25 C.J. *Fiduciary* § 9, at 1119 (1921)) (emphasis added), *quoted in Patterson v. Strickland,* 133 N.C. App. 510, 516, 515 S.E.2d 915, 919 (1999). However, the broad parameters accorded the term have been specifically limited in the context of employment situations. Under the general rule, "the relation of employer and employee is not one of those regarded as confidential." *King v. Atlantic Coast Line R.R. Co.,* 157 N.C. 44, 72 S.E. 801 (1911); *see also Hiatt v. Burlington Indus., Inc.,* 55 N.C. App. 523, 529, 286 S.E.2d 566, 569, *disc. rev. denied,* 305 N.C. 395, 290 S.E.2d 365 (1982).

In applying this Court's definition of fiduciary relationship to the facts and circumstances of the instant case—in which employee Camp served as production manager for a division of employer Dalton's publishing business—we note the following: (1) the managerial duties of Camp were such that a certain level of confidence was reposed in him by Dalton; and (2) as a confidant of his employer, Camp was therefore bound to act in good faith and with due regard

to the interests of Dalton. In our view, such circumstances, as shown here, merely serve to define the nature of virtually all employer-employee relationships; without more, they are inadequate to establish Camp's obligations as fiduciary in nature. No evidence suggests that his position in the workplace resulted in "domination and influence on the other [Dalton]," an essential component of any fiduciary relationship. *See Abbitt*, 201 N.C. at 598, 160 S.E. at 906. Camp was hired as an at-will employee to manage the production of a publication. His duties were those delegated to him by his employer, such as overseeing the business's day-to-day operations by ordering parts and supplies, operating within budgetary constraints, and meeting production deadlines. In sum, his responsibilities were not unlike those of employees in other businesses and can hardly be construed as uniquely positioning him to exercise dominion over Dalton. Thus, absent a finding that the employer in the instant case was somehow subjugated to the improper influences or domination of his employee—an unlikely scenario as a general proposition and one not evidenced by these facts in particular—we cannot conclude that a fiduciary relationship existed between the two. As a result, we hold that the trial court properly granted defendant Camp's motion for summary judgment as to Dalton's claim alleging a breach of fiduciary duty and reverse the Court of Appeals on this issue.

[2] As for any claim asserted by Dalton for breach of a duty of loyalty (in an employment-related circumstance) outside the purview of a fiduciary relationship, we note from the outset that: (1) no case cited by plaintiff recognizes or supports the existence of such an independent claim, and (2) no pattern jury instruction exists for any such separate action. We additionally note that Dalton relies on cases he views as defining an independent duty of loyalty, *see McKnight v. Simpson's Beauty Supply*, 86 N.C. App. 451, 358 S.E.2d 107 (1987); *In re Discharge of Burris*, 263 N.C. 793, 140 S.E.2d 408 (1965) (per curiam), even though those cases were devoid of claims or counterclaims alleging a breach of such duty. In *McKnight*, the Court of Appeals held that every employee was obliged to "serve his employer faithfully and discharge his duties with reasonable diligence, care and attention." 86 N.C. App. at 453, 358 S.E.2d at 109. However, the rule's role in deciding the case was limited; it was but a factor in determining whether an employer was justified in terminating an employee. The circumstance and conclusion reached in *Burris* are strikingly similar. At issue in that case was whether a civil service employee was properly discharged after he "knowingly . . . brought about a con-

## DALTON v. CAMP

[353 N.C. 647 (2001)]

flict of interest between himself and his employer." *Burris*, 263 N.C. at 795, 140 S.E.2d at 410. In deciding the case, this Court wrote "[w]here an employee deliberately acquires an interest adverse to his employer, he is disloyal, *and his discharge is justified.*" *Id.* (emphasis added). Conspicuously absent from the *Burris* Court's consideration was any claim or counterclaim seeking damages resulting from an alleged breach of a duty of loyalty.

In our view, if *McKnight* and *Burris* indeed serve to define an employee's duty of loyalty to his employer, the net effect of their respective holdings is limited to providing an employer with a defense to a claim of wrongful termination. No such circumstance is at issue in the instant case, in which Camp resigned from Dalton's employ. Thus, we hold that: (1) there is no basis for recognizing an independent tort claim for a breach of duty of loyalty; and (2) since there was no genuine issue as to any material fact surrounding the claim as stated in the complaint (breach of fiduciary duty, including a duty of loyalty), the trial court properly concluded as a matter of law that summary judgment was appropriate for Camp.

To the extent that the holding in *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 951 F. Supp. 1224 (M.D.N.C. 1996), can be read to sanction an independent action for breach of duty of loyalty, *see id.* at 1229 ("There is a cause of action for violation of the duty of loyalty."), we conclude that the federal district court incorrectly interpreted our state case law by assuming that: (1) "[s]ince the [state's] courts recognize the existence of the duty of loyalty, it follows that they *would* recognize a claim for breach of that duty," *id.* (emphasis added); and (2) the "North Carolina . . . Supreme Court[] *likely would* recognize a broader claim" for a breach of fiduciary duty, *id.* (emphasis added). As previously explained, although our state courts recognize the existence of an employee's duty of loyalty, we do not recognize its breach as an independent claim. Evidence of such a breach serves only as a justification for a defendant-employer in a wrongful termination action by an employee. Moreover, an examination of our state's case law fails to reveal support for the federal district court's contention that this Court would broaden the scope of fiduciary duty to include food-counter clerks employed by a grocery store chain.

As for the holding in *Long*, we note that the corporate employer in that case was awarded damages for "a material breach of . . . fiduciary duty of good faith, fair dealing and loyalty" by its employees.

113 N.C. App. at 604, 439 S.E.2d at 802. Essentially, the *Long* court determined that the employees, who originally founded the company in question and served respectively as its president and senior vice president, owed a fiduciary duty to the parent firm and that they breached that duty by taking actions contrary to the parent firm's best interests. Thus, the claim and damages awarded in *Long* resulted from: (1) a showing of a fiduciary relationship, (2) thereby establishing a fiduciary duty, and (3) a breach of that duty. No such fiduciary relationship or duty is evidenced by the circumstances of the instant case.

II.

[3] As for Dalton's claim against Camp and MCC for tortious interference with prospective advantage, this Court has held that "interfere[nce] with a man's business, trade or occupation by maliciously inducing a person not to enter a contract with a third person, which he would have entered into but for the interference, is actionable if damage proximately ensues." *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965); *see also Cameron v. New Hanover Mem'l Hosp., Inc.*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (affirming view that plaintiff must show that contract would have ensued but for defendant's interference), *appeal dismissed and disc. rev. denied*, 307 N.C. 127, 297 S.E.2d 399 (1982).

In applying the law to the circumstances of the instant case, we note the following: (1) under contract, Dalton had published a newsletter to the expressed satisfaction of KFI for thirty-six months; (2) at or about the time that the original contract expired, Dalton and KFI discussed renewing the deal; (3) such negotiations reached an impasse over two key terms (duration of the new contract and price); (4) in the aftermath of the expired original contract, the parties agreed that Dalton would continue to publish the newsletter on a month-to-month basis; (5) during this negotiating period, Camp formed a rival publishing company (MCC); and (6) while still in the employ of Dalton, Camp (representing MCC) entered into a contract with KFI to publish its newsletter. Approximately two weeks after signing the KFI deal, Camp resigned his position with Dalton, presumably in order to run MCC with his partner, Menius.

Although the facts confirm that Camp joined the negotiating fray at a time when Dalton and KFI were still considering a contract between themselves, thereby establishing a proper time frame for

tortious interference, two other obstacles undermine Dalton's claim. First, there is no evidence suggesting that Camp induced, no less maliciously induced, KFI into entering a contract. According to testimony from the deposition of Mark Walker, KFI's human resources director, it was he who approached Camp about assuming the newsletter contract, not vice versa. Moreover, Dalton admitted in his own deposition that he had no personal knowledge as to the specifics of who offered what amid conversations between Camp and Walker. Thus, nothing in the record reflects an improper inducement on the part of Camp.

Second, while Dalton may have had an expectation of a continuing business relationship with KFI, at least in the short term, he offers no evidence showing that but for Camp's alleged interference a contract would have ensued. After Dalton's original contract expired, he met with KFI to discuss terms for a possible renewal. During the negotiation period, the parties agreed that Dalton would continue publishing the newsletter on an interim basis. However, with regard to a new contract, KFI said it wanted a discount from the original contract price. In response, Dalton said he could not reduce the price as he was not making any profit on the publication. KFI, through Walker, then urged Dalton to consider the matter further and get back to the company, which, by his own admission, Dalton never did. In our view, such circumstances fail to demonstrate that a Dalton-KFI contract would have ensued.

The absence of evidence supporting two essential elements of a party's allegation of interference with prospective advantage—intervenor's inducement of a third party and a showing that a contract would have ensued—exposes a fatal weakness in that claim. As a result, we hold that the trial court properly granted summary judgment for both Camp and his company, MCC, see *Econo-Travel*, 301 N.C. at 203, 271 S.E.2d at 57, and thus reverse the Court of Appeals on this issue.

III.

[4] Dalton additionally argues that he has presented a genuine question of material fact as to alleged unfair and deceptive trade practices of Camp and MCC. Again, we disagree.

The extent of trade practices deemed as unfair and deceptive is summarized in N.C.G.S. § 75-1.1(a) ("the Act"), which provides: "Unfair methods of competition in or affecting commerce, and unfair

or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a) (1999). The Act was intended to benefit consumers, *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986), but its protections extend to businesses in appropriate situations. *See, e.g., United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988) ("After all, unfair trade practices involving only businesses affect the consumer as well.").

Although this Court has held that the Act does not normally extend to run-of-the-mill employment disputes, *see HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991) (citing *Buie v. Daniel Inter'l Corp.*, 56 N.C. App. 445, 289 S.E.2d 118 (holding that employment disputes involving workers' compensation and wrongful termination issues fall within the purview of other statutes and that such disputes do not fall within the intended scope of N.C.G.S. § 75-1.1), *disc. rev. denied*, 305 N.C. 759, 292 S.E.2d 574 (1982)), we note that the mere existence of an employer-employee relationship does not in and of itself serve to exclude a party from pursuing an unfair trade or practice claim. For example, employers have successfully sought damages under the Act when an employee's conduct: (1) involved egregious activities outside the scope of his assigned employment duties, and (2) otherwise qualified as unfair or deceptive practices that were in or affecting commerce. *See Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (holding that a defendant cannot use his status as an employee to shield himself from liability if his conduct constitutes unfair and deceptive trade practices as defined by the Act).

In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991). A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (citing *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)). The determination as to whether an act is unfair or deceptive is a question of law for the court. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). As for whether a particular act was one "in or affecting commerce," we note that N.C.G.S. § 75-1.1(b) defines "commerce" inclusively as "business activity, how-

**DALTON v. CAMP**

[353 N.C. 647 (2001)]

ever denominated." We also note that while the statutory definition of commerce crosses expansive parameters, it is not intended to apply to all wrongs in a business setting. Examples of business activity beyond the scope of the statutory definition include: professional services, *see* N.C.G.S. § 75-1.1(b); most employer-employee disputes, *see HAJMM*, 328 N.C. at 593, 403 S.E.2d at 492; and securities transactions, *see Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 333 S.E.2d 236 (1985). Moreover, "[s]ome type of *egregious* or *aggravating* circumstances must be alleged and proved before the [Act's] provisions may [take effect]." *Allied Distribs., Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993) (emphasis added); *see also Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. rev. denied*, 332 N.C. 482, 421 S.E.2d 350 (1992).

Application of the aforementioned law to the circumstances underlying the dispute between Dalton and Camp serves a twofold purpose. By helping to illustrate the distinguishing characteristics between the instant case and *Sara Lee*—a case in which an employer successfully pursued an unfair and deceptive trade practices claim against an employee—the analysis simultaneously demonstrates why Camp's actions did not amount to unfair or deceptive trade practices.

In *Sara Lee*, this Court concluded that "defendant's relationship to plaintiff as an employee, *under these facts*, does not preclude applicability of N.C.G.S. § 75-1.1." 351 N.C. at 34, 519 S.E.2d at 312 (emphasis added). In the Court's view, the defendant: (1) had fiduciary duties, and (2) was entrenched in buyer-seller transactions that fell squarely within the Act's intended reach. *Id.* While serving as a purchasing agent for Sara Lee, defendant was simultaneously selling parts to his employer at inflated prices, a scheme characterized by the Court as self-dealing conduct "in or affecting commerce." *Id.* at 33, 519 S.E.2d at 311. As a consequence, the Court held that it would not permit the defendant to use his employment status as a *de facto* defense against his employer's unfair and deceptive trade practices claim.

In contrast, as evidenced in part I of this opinion, *supra*, the two parties in the instant case were not in a fiduciary relationship. Thus, employee Camp was unencumbered by fiduciary duties, a significant distinction between him and the employee-defendant in *Sara Lee*. Camp's duties as a production manager for Dalton were limited to those commonly associated with any employee. He simply produced a magazine—designing layouts, editing content, printing copies, etc.

**DALTON v. CAMP**

[353 N.C. 647 (2001)]

Unlike the *Sara Lee* defendant, who worked as a purchasing agent, Camp did not serve his employer in the capacity of either a buyer or a seller. Nor did he serve in any alternative capacity suggesting that his employment was such that it otherwise qualified as "in or affecting commerce."

We also find no evidence of attendant circumstances to indicate that Camp's conduct was especially egregious or aggravating. *See Branch Banking*, 107 N.C. App. at 62, 418 S.E.2d at 700. Camp met with a KFI representative and raised the possibility of forming his own publishing company. He and the KFI representative later discussed having Camp's new company publish KFI's magazine, talks that ultimately culminated in an exclusive publishing agreement between Camp and KFI. However, during this period, we note that Camp also continued his best efforts to publish Dalton's final issue. That he failed to inform his employer of the ongoing negotiations and resigned after signing the KFI deal may be an unfortunate circumstance; however, in our view, such business-related conduct, without more, is neither unlawful in itself, see parts I and II of this opinion, *supra*, nor aggravating or egregious enough to overcome the long-standing presumption against unfair and deceptive practices claims as between employers and employees.

As a consequence of concluding that employee Camp was without fiduciary duty, that his position was not one "in or affecting commerce," and that his business actions were neither aggravating nor egregious, we conclude that the trial court properly granted summary judgment as to employer Dalton's claim under N.C.G.S. § 75-1.1. Therefore, with regard to both appellants Camp and MCC, we reverse the Court of Appeals on this issue.

In sum, the decision of the Court of Appeals is hereby reversed as to appellee Dalton's claims for: (1) breach of fiduciary duty of loyalty against Camp; (2) interference with prospective advantage against Camp and his company, MCC; and (3) unfair and deceptive acts or practices against Camp and MCC. Accordingly, that court is instructed to reinstate the judgment of the trial court.

REVERSED.