**PHELPS STAFFING, LLC v. C.T. PHELPS, INC.**

[226 N.C. App. 506 (2013)]

PHELPS STAFFING, LLC, Plaintiff
v.
C. T. PHELPS, INC. and CHARLES T. PHELPS, Defendants

No. COA12-886

Filed 16 April 2013

1. **Employer and Employee—noncompetition agreement—not enforceable**

   The trial court correctly concluded that a noncompetition agreement was not enforceable and granted summary judgment for defendants on a tortious interference claim where plaintiff's noncompetition agreement served only to hamper lawful competition while placing an unreasonable burden on the ability of plaintiff's former employees to make a living.

2. **Unfair Trade Practices—hiring competitor's employees—billing—conduct not egregious**

   The trial court did not err by granting summary judgment for defendants on a claim for unfair and deceptive practices or acts arising from the hiring of a competitor's employees and the subsequent billing for their work. Plaintiff did not allege before the trial court any circumstances independent of an unenforceable noncompetition agreement that would support a conclusion that the billing by CTP, Inc. amounted to egregious or aggravating circumstances.

   Appeal by plaintiff from order entered 3 April 2012 by Judge Howard E. Manning, Jr. in Franklin County Superior Court. Heard in the Court of Appeals 29 January 2013.

   *Harris & Hilton, P.A., by Nelson G. Harris, for plaintiff-appellant.*

   *Edmundson & Burnette, L.L.P., by J. Thomas Burnette and James T. Duckworth, III, for defendants-appellees.*

   *North Carolina Justice Center, by Carol Brooke, amicus curiae.*

   HUNTER, Robert C., Judge.

   Plaintiff-appellant Phelps Staffing, LLC ("plaintiff") appeals from the trial court's order granting summary judgment in favor of defendants-appellees C. T. Phelps, Inc. ("CTP, Inc.") and Charles T. Phelps (collectively

## PHELPS STAFFING, LLC v. C.T. PHELPS, INC.

[226 N.C. App. 506 (2013)]

"defendants") on three causes of action: (1) tortious interference with contract; (2) conversion; and (3) unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1.[1] Plaintiff's arguments on appeal address only the first and third claims. After careful review, we affirm the trial court's order.

### Background

The history of the parties and their prior litigation need not be recounted here as it has been well documented by this Court in *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, __ N.C. App. __, 720 S.E.2d 785 (2011). The facts pertinent to this appeal may be summarized as follows. Plaintiff and CTP, Inc. are both North Carolina corporations engaged in the business of providing temporary labor to clients. In December 2008, CTP, Inc. began competing with plaintiff for plaintiff's existing clients. CTP, Inc. was successful in acquiring several of plaintiff's clients and convinced these clients to fulfill their temporary labor needs through CTP, Inc. rather than through plaintiff. To meet the needs of its new clients, CTP, Inc. recruited some of plaintiff's employees and allowed them to keep the same or similar contract labor positions with the clients; a process plaintiff describes as "flipping" employees.

In 2009, in an attempt to thwart CTP, Inc.'s competition, plaintiff began requiring employees to sign a noncompetition agreement effectively prohibiting plaintiff's employees from leaving plaintiff's employment to work directly for plaintiff's clients as an employee of that corporation or to work indirectly for plaintiff's clients through another temporary staffing business. The agreement plaintiff required its employees to sign reads as follows:

> In consideration of [Phelps Staffing] utilizing and placing Employee with a company customer, during the term of Employee's employment with [Phelps Staffing] and for a period of twelve (12) months from the voluntary or involuntary termination of Employee's employment with [Phelps Staffing] for any reason whatsoever, with respect to any Company customer whom Employee provided services for or was placed as a temporary worker with ("Company Customer"), Employee will not[:]

---

1. Plaintiff cites N.C. Gen. Stat. § 75-1.1 in its complaint to allege "unfair and deceptive trade practices" by defendants. While references to the acts proscribed by this statute as "trade practices" persist in our caselaw, the word "trade" was removed from the statute in 1977. *See* 1977 N.C. Sess. Laws ch. 747, § 1.

(a) discuss or accept employment similar to the services or work Employee performed for such Company customer;

(b) accept employment from, or contract with, any individual, partnership or company for placement (as a temporary work or permanent hire) of Employee with a Company Customer for the provision of services similar to the services or work performed for such Company Customer; or

(c) enter into any contract with a Company Customer for performance of services similar to the services performed by Employee for such Company Customer while employed by [Phelps Staffing].

In summary, the agreement provides that during an employee's employment by plaintiff, and for a period of one year after the voluntary or involuntary termination of employment with plaintiff, the employee will not discuss or accept employment at plaintiff's clients where the employee had been placed for work by plaintiff. Plaintiff admits that its primary purpose in requiring job applicants to execute the noncompetition agreement was to prevent its employees from working for CTP, Inc. or for other competitors at plaintiff's clients.

Plaintiff alleges that sometime between 2 October 2010 and 12 October 2010, CTP, Inc. "flipped" a number of plaintiff's employees that had been placed by plaintiff at facilities in North Carolina, Georgia, and Virginia that were operated by plaintiff's clients, including Hoover Treated Wood Products, Inc. ("Hoover"). Each employee that was flipped completed an application for employment with CTP, Inc., and plaintiff's clients acquiesced to the change in employment by their temporary workers. Some of the applications for employment with CTP, Inc. submitted by employees in Virginia are dated 4 October 2010. Plaintiff contends, however, that these applications were received by CTP, Inc. on 11 October 2010 and were altered to appear as though they were completed on 4 October 2010. Plaintiff further alleges that CTP, Inc. then improperly billed Hoover and another client for work performed and completed by temporary workers while the temporary workers were still plaintiff's employees. The billing covered the week of 4 October 2010 through 10 October 2010. Hoover paid CTP, Inc. for this work. Plaintiff alleges its damages resulting from the improper billing totaled $5,267.12.

On 16 November 2010, plaintiff filed the underlying action against defendants. Plaintiff alleged tortious interference with contract against defendants for inducing plaintiff's former employees to violate the noncompetition agreement. Plaintiff alleged that defendants' billing of

**PHELPS STAFFING, LLC v. C.T. PHELPS, INC.**

[226 N.C. App. 506 (2013)]

Hoover for work performed by plaintiff's employees amounted to conversion. Plaintiff also alleged that defendants' conduct amounted to unfair and deceptive practices and acts in violation of N.C. Gen. Stat. § 75-1.1.

The trial court granted summary judgment in favor of defendants concluding that the noncompetition agreement signed by plaintiff's employees was "unconscionable, void and unenforceable as a matter of law and public policy[.]" The trial court also granted summary judgment on plaintiff's claim for conversion concluding that the alleged improper billing did not amount to conversion. Lastly, the trial court concluded that plaintiff's unfair and deceptive practices claim necessarily failed because the claim was based on the claims for tortious interference with contract and conversion, on which the trial court granted summary judgment in favor of defendants. As for plaintiff's claim for $5,267.12 in damages resulting from CTP, Inc.'s billing, the trial court "recommend[ed]" that defendants either pay the amount to plaintiff or that plaintiff institute a separate civil action to recover the damages. Plaintiff appeals.

## Arguments

We review *de novo* the trial court's ruling on a motion for summary judgment. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Summary judgment "is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Id.* (quoting *Forbis v. Neal*, 361 N.C. 519, 523–24, 649 S.E.2d 382, 385 (2007)). "All facts asserted by the [nonmoving] party are taken as true . . . and their inferences must be viewed in the light most favorable to that party[.]" *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (internal citations omitted).

### A. Noncompetition Agreement

[1] "[R]estrictive covenants between an employer and employee are valid and enforceable if they are (1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 649-50, 370 S.E.2d 375, 380 (1988). It is the last of these elements that is at issue in this case: whether the noncompetition agreement Phelps Staffing required its employees to sign is unenforceable as a matter of public policy.

As defendants contend, our caselaw disfavors noncompetition agreements which hamper an individual's right to earn a livelihood unless the restriction protects a sufficient countervailing interest of the employer. *See Starkings Court Reporting Services v. Collins*, 67 N.C.

App. 540, 541-42, 313 S.E.2d 614, 615 (1984). The right of an employer to protect itself from competition must be balanced against "undue hardship" on the employee:

> [E]ven where there is an otherwise permissible covenant not to compete: [T]he restraint is unreasonable and void if it *is greater than is required for the protection of the promisee or if it imposes an undue hardship upon the person who is restricted.* Owing to the possibility that a person may be deprived of his livelihood, the courts are less disposed to uphold restraints in contracts of employment than to uphold them in contracts of sale.

*Id.* (quoting *Wilmar, Inc. v. Liles*, 13 N.C. App. 71, 75, 185 S.E.2d 278, 281 (1971)) (emphasis added) (second alteration in original).

In *Electrical South, Inc. v. Lewis*, 96 N.C. App. 160, 165, 385 S.E.2d 352, 355 (1989), this Court noted that determining whether a noncompetition agreement offends public policy requires us to consider " 'the right of the employer to protect, by reasonable contract with [its] employee, the unique assets of [its] business, a knowledge of which is acquired during the employment and by reason of it[.]' " *Id.* (quoting *Kadis v. Britt*, 224 N.C. 154, 159, 29 S.E.2d 543, 546 (1944)). We have recognized such unique assets to include customer contacts and confidential information. *Id.* However, when such proprietary interests of the employer are absent and "the effect of a contract 'is merely to stifle normal competition, it is . . . offensive to public policy . . . in promoting monopoly at the public expense and is bad.' " *Starkings*, 67 N.C. App. at 542, 313 S.E.2d at 616 (quoting *Kadis*, 224 N.C. at 159, 29 S.E.2d at 546).

In *Starkings*, we concluded that the noncompetition agreement at issue was unenforceable as a matter of public policy. The defendant in *Starkings*, against whom the plaintiff sought to enforce the noncompetition agreement, "had no access to trade secrets or unique information as a result of her business association with [the] plaintiff." *Id.* at 542, 313 S.E.2d at 616. It was clear to the Court that the agreement "was designed for one purpose: to restrain and inhibit normal competition." *Id.* at 542, 313 S.E.2d at 616. Accordingly, we held the noncompetition agreement was against public policy and imposed greater restraint on the defendant's ability to earn a living than was necessary to protect the plaintiff's business interests. *Id.*

Here, plaintiff admits that his primary purpose in requiring employees to sign the noncompetition agreement was to prevent competition from other temporary labor providers, particularly CTP, Inc. In oral

arguments before this Court, plaintiff conceded that its employees do not have access to trade secrets or proprietary information as a result of their employment with plaintiff. Indeed, plaintiff describes its employees as "general laborer[s]." Plaintiff contends that the noncompetition agreement is not unconscionable because it "is not so oppressive that no honest and fair person, particularly a general laborer seeking employment, would accept the same."

As defendants note, however, the trial court did not conclude that the noncompetition agreement was unenforceable solely on the grounds that it was unconscionable. Rather, the trial court concluded the agreement was unconscionable and unenforceable as a matter of public policy. The record supports the trial court's conclusion that the agreement is merely an attempt to stifle lawful competition between businesses and that it unfairly hinders the ability of plaintiff's former employees to earn a living.

Plaintiff argues that the noncompetition agreement is not so broad as to prevent its former employees from working for any of plaintiff's clients but prohibits its former employees from working only for those clients with whom the employee was placed for temporary work. Plaintiff argues that the scope of the noncompetition agreement is further limited such that it only prohibits former employees from working at the specific location of the client where the former employee was placed for work by plaintiff, e.g. a specific Hoover plant where an employee worked. Plaintiff's interpretation of the scope of the noncompetition agreement is not supported by the record. We agree that the terms of the agreement do not prohibit an employee from accepting employment from one of plaintiff's customers with whom an employee was not placed for work. But, as to those customers with whom the employee was placed for work, the agreement does not contain any terms restricting its scope to only the specific location where that employee was placed for work. Thus, a former employee would be prohibited from working for a client, such as Hoover, whether the client had a second location in the same city or in a different state. Moreover, as the agreement provides that its terms apply after termination of the employee "for any reason whatsoever," if Phelps Staffing were to decide to no longer provide staffing to a client and terminated its contract with the client, plaintiff's noncompetition agreement would prevent the former employees from accepting employment from plaintiff's former client for a period of twelve months.

"The line of demarcation . . . between freedom to contract on the one hand and public policy on the other must be left to the circumstances of the individual case. Just where this line shall be in any given situation is

to be determined by the rule of reason." *Beam v. Rutledge*, 217 N.C. 670, 674, 9 S.E.2d 476, 478 (1940). Public policy favors the enforcement of contracts that protect legitimate business interests but must also guard against unreasonable restrictions. *Id.* at 673, 9 S.E.2d at 478. Under the facts of this case, we conclude plaintiff's noncompetition agreement serves only to hamper lawful competition while placing an unreasonable burden on the ability of plaintiff's former employees to make a living. As such, we hold that the noncompetition agreement at issue in this case is unenforceable as a matter of public policy. Because the noncompetition agreement is unenforceable, the contract cannot support plaintiff's claim for tortious interference with contract, and the trial court did not err in granting summary judgment in favor of defendants on that claim.

## B. Unfair or Deceptive Acts or Practices

**[2]** Plaintiff next contends that the trial court erred in granting summary judgment in favor of defendants on plaintiff's claim for unfair and deceptive practices and acts. We disagree.

To establish a *prima facie* claim under N.C. Gen. Stat. § 75-1.1(a), a plaintiff must show: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* While the scope of "commerce" under N.C. Gen. Stat. § 75.1-1(a) is broad, "it is not intended to apply to all wrongs in a business setting." *Id.* at 657, 548 S.E.2d at 711. "Moreover, '[s]ome type of *egregious or aggravating* circumstances must be alleged and proved before [section 75-1.1(a)'s] provisions may [take effect].' " *Id.* (quoting *Allied Distribs., Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993)) (first and third alterations in original).

Plaintiff contends that CTP, Inc. billed and collected money from Hoover for work performed by individuals that were plaintiff's employees and that the billing constituted acts in violation of N.C. Gen. Stat. § 75-1.1(a). The trial court concluded that plaintiff's claim for unfair and deceptive practices and acts ("UDPA") was founded on plaintiff's claims for tortious interference with contract and conversion[2] on which summary judgment was granted in favor of defendants. Concluding there was

---

2. On appeal, plaintiff raises no argument regarding the trial court's ruling on plaintiff's claim for conversion. Accordingly, we deem the issue abandoned. N.C. R. App. P. 28(b)(6) (2012).

nothing separate to support the UDPA claim, the trial court granted summary judgment in favor of defendants on the UDPA claim as well.

In its brief on appeal, plaintiff alleges that when CTP, Inc. flipped some of its employees, CTP, Inc. altered the dates on some of the job applications submitted to CTP, Inc. by plaintiff's employees. As a result of these alterations, it appears as if the flipped employees began working for CTP, Inc. before they left plaintiff's employment. Plaintiff contends that CTP, Inc. then billed, and collected money from, Hoover for the work performed by the temporary workers while they were plaintiff's employees. Although copies of work applications appear in the record on which plaintiff alleges the application date has been altered, the record does not establish that plaintiff alleged any conduct by CTP, Inc. that amounted to anything other than a billing error. Thus, despite plaintiff's arguments on appeal, we conclude that plaintiff did not allege before the trial court any circumstances independent of the noncompetition agreement that would support a conclusion that the billing by CTP, Inc. amounted to egregious or aggravating circumstances. Accordingly, the trial court did not err in granting summary judgment in favor of defendants on this claim. *See Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 248, 446 S.E.2d 100, 106 (1994) (affirming grant of summary judgment in favor of the defendant on the plaintiff's UDPA claim where the plaintiff failed to allege or present evidence of substantial aggravating circumstances for UDPA claim in complaint or at hearing before the trial court). Plaintiff's argument is overruled.

## Conclusion

Because we conclude the noncompetition agreement signed by plaintiff's employees is unenforceable as a matter of public policy, the trial court did not err in granting summary judgment in favor of defendants on plaintiff's claim for tortious interference with contract. Plaintiff abandoned its appeal from the trial court's ruling on its claim for conversion. Plaintiff failed to allege any egregious or aggravating circumstances to support its claim that CPT, Inc.'s billing for work performed by plaintiff's employees was an unfair and deceptive practice or act. Accordingly, the trial court's order is affirmed.

AFFIRMED.

Judges McCULLOUGH and DAVIS concur.