Se. Air Charter, Inc. v. Stroud, 2015 NCBC 79.

STATE OF NORTH CAROLINA

COUNTY OF LEE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 946

SOUTHEAST AIR CHARTER, INC., )
                              )
        Plaintiff, )
                              )
        v. )
                              )
ROBERT BARRY STROUD, and wife, )
JENNIFER STROUD, UTILITY )
HELICOPTERS, LLC, )
RENAISSANCE JET, LLC, RUSSELL )
VIALL, KAREN LEE ROBINSON and )
DONNIE LAUDERDALE, )
                              )
        Defendants. )
                              )

FINAL ORDER ON ATTORNEYS'
COSTS AND FEES

{1}     THIS MATTER is before the Court for the final determination of attorneys' fees to be awarded, and against whom, pursuant to its June 30, 2015 Order. The Court determines the matter without further oral argument pursuant to Rule 15.4 of the General Rules of Practice and Procedure for the Business Court. After considering the matters of record, briefs of counsel, and authorities cited, the Court determines that attorneys' fees in the total amount of $14,680.70 and costs of $5,182.83 should be taxed solely against Plaintiff Southeast Air Charter, Inc. ("SEAC").

     *Yarborough, Winters & Neville, P.A. by J. Thomas Neville for Plaintiff.*

     *Van Camp, Meacham & Newman, PLLC by Thomas M. Van Camp and Richard Lee Yelverton, III for Defendants Russell Viall, Kathleen Steiner-Crowley, and Karen Lee Robinson.*

Gale, Chief Judge.

## I.    BACKGROUND

{2}     This Court issued its initial June 30, 2015 Order ("Initial Order"), determining that sanctions were appropriate in regard to some but not all of

Plaintiff's claims, leaving open the amount of attorneys' fees to be awarded and against whom they should be taxed, pending receipt of supporting documentation. The Court now enters its Final Order, incorporating findings and conclusions from the Initial Order, and repeating only those findings necessary to provide context for this Final Order.

{3}     Plaintiff initiated this action on September 22, 2011, and filed an Amended Complaint on January 30, 2012.  Relevant to this Order, the Complaint and Amended Complaint alleged the following claims against Defendants Kathleen Steiner-Crowley ("Steiner-Crowley"), Karen Robinson ("Robinson"), and Russell Viall ("Viall") (collectively, "the Moving Defendants"): (1) breach of fiduciary duty; (2) constructive fraud; (3) conversion; (4) trespass to personalty; (5) unjust enrichment; (6) unfair and deceptive trade practices ("UDTP"); (7) fraud; (8) tortious interference with contract; (9) tortious interference with prospective contract; (10) conspiracy; (11) unauthorized appropriation for invasion of privacy; (12) piercing the corporate veil; (13) reverse piercing the corporate veil; and (14) punitive damages.

{4}     The Moving Defendants have been represented by Van Camp, Meacham & Newman, PLLC ("the Firm").  Service of a summons on Robinson was delayed for several months, during which period the Firm represented Steiner-Crowley and Viall, who each agreed to pay one-half of the Firm's charges.  After service upon Robinson, the three Moving Defendants agreed to share fees on an equal, one-third basis.  After claims against Steiner-Crowley were dismissed on September 10, 2013, Robinson and Viall assumed responsibility for equal shares of the Firm's charges.

{5}     All claims against the Moving Defendants were dismissed before the Court was required to consider them upon motion.  None of the Moving Defendants filed a motion pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").  After the litigation had been pending for several months, Plaintiff dismissed claims against Steiner-Crowley before she had filed any dispositive motion.  Robinson and Viall filed a motion for summary judgment on November 26, 2013.  Prior to oral argument, Plaintiff dismissed the breach of

fiduciary duty and constructive fraud claims against Robinson and Viall on January 27, 2014, but did not dismiss the conspiracy claim. Robinson and Viall filed a second motion for summary judgment on April 1, 2014, seeking to dismiss the conspiracy claims. Plaintiff did not file an opposition but voluntarily dismissed all remaining claims against Robinson and Viall on April 24, 2015.

{6} On August 28, 2014, the Moving Defendants filed their Motion for Attorneys' Fees and Costs. In its Initial Order, the Court determined that Rule 11 sanctions were appropriate as to only some claims, including all claims against Steiner-Crowley and breach of fiduciary duty and constructive fraud claims against Robinson and Viall. *Se. Air Charter, Inc. v. Stroud*, 2015 NCBC LEXIS 68, *21–22 (N.C. Super. Ct. June 30, 2015). The Court deferred determination of the amount of sanctions pending further documentation of attorneys' fees incurred. *Id.* at *27.

{7} On July 18, 2015, the Moving Defendants submitted the Affidavit of Thomas M. Van Camp ("Van Camp"), requesting a total of $35,887.01 in attorneys' fees, reflecting $19,322.00 of fees charged to Steiner-Crowley, $7,578.12 of fees charged to Robinson, and $8,986.89 of fees charged to Viall. Van Camp indicates that the requested sums for Robinson and Viall represent one-third of the total fees they incurred while the fiduciary duty claims were pending against them, less any charges that pertained solely to other claims. (Van Camp Aff. ¶ 10, July 8, 2015.)

{8} Plaintiff's counsel, J. Thomas Neville ("Neville"), submitted affidavits to support his argument that no sanctions should be imposed against him or his firm because he conducted a reasonable and adequate investigation to warrant his belief that there was a valid factual basis for each claim at the time it was filed. In particular, Neville asserts that he reasonably relied on assurances from his client that Steiner-Crowley, Robinson, and Viall were each active participants in the wrongs committed against Plaintiff, and that Plaintiff had vested each with sufficient trust and confidence to subject them to a proper claim of breach of fiduciary duty, even though they were employees and not officers or directors. Moving Defendants contend that sanctions should be jointly imposed on Plaintiff and Neville.

## II.  STANDARD OF REVIEW

{9}     If a trial court concludes that a Rule 11 violation has occurred, it fashions an appropriate sanction and determines upon whom to impose such sanction.  N.C. R. Civ. P. 11(a).  The decision is to be made upon the trial court's exercise of sound discretion, which should not be based upon "irrelevant or improper matters."  *Hill v. Hill*, 173 N.C. App. 309, 315, 622 S.E.2d 503, 508 (2005) (quoting *Cent. Carolina Nissan, Inc. v. Sturgis*, 98 N.C. App. 253, 264, 390 S.E.2d 730, 737 (1990)).  The imposition of actual sanctions must not be "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision."  *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 667, 554 S.E.2d 356, 363 (2001) (quoting *State v. Fowler*, 353 N.C. 599, 620, 548 S.E.2d 684, 699 (2001)).  When awarding attorneys' fees, the trial court makes "findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney."  *McKinnon v. CV Indus.*, 745 S.E.2d 343, 351 (N.C. Ct. App. 2013) (quoting *Shepard v. Bonita Vista Props., L.P.*, 191 N.C. App. 614, 626, 664 S.E.2d 388, 396 (2008), *aff'd per curiam*, 363 N.C. 252, 675 S.E.2d 332 (2009)); *see also Polygenex Int'l, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 253, 515 S.E.2d 457, 463 (1999).  When doing so, it considers the degree of complexity of the specific case.  *VSD Commc'ns, Inc. v. Lone Wolf Publ'g Grp., Inc.*, 124 N.C. App. 642, 646, 478 S.E.2d 214, 217 (1996).

## III.  ANALYSIS

{10}    To determine whether the claimed fees are reasonable, the Court considers both the rate at which fees were charged and the total amount of time expended in representation.

{11}    The Firm's charges were for efforts by three attorneys and one paralegal.  Van Camp, a partner at the Firm who has practiced law in North Carolina for twenty-five years, was primarily responsible for the defense.  From 2011 to 2013, Van Camp billed at the rate of $300 per hour.  He increased his billing rate in 2013 to $325 per hour and in 2014 to $350 per hour.  Richard Yelverton, III

and Evelyn Savage were associates with eight years' experience when they began to work on the matter. Yelverton worked on the matter from 2011 to 2012 with an initial billing rate of $230 per hour, which was increased to $250 per hour in 2012. Savage worked on the matter from 2013 to 2014, with an initial billing rate of $225 per hour, which was increased to $240 per hour in 2014. Lorie Morse, a paralegal with approximately twenty-five years of legal experience, had an initial billing rate of $100 per hour, which was increased to $125 per hour in 2013.

{12}  The Court is aware of rates charged for similar matters in the Superior Court, including matters designated to this Court from Moore County and similar locations. The Court finds that the hourly rates charged were appropriate and reasonable for this case and other cases of similar complexity. Accordingly, the hourly rates charged were appropriate and reasonable.

{13}  The Court then considers whether the overall amount of time charged on the matter was also reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *quoted in Out of the Box Devs., LLC v. Doan Law, LLP*, 2014 NCBC LEXIS 39, *23–24 (N.C. Super. Ct. Aug. 29, 2014). "[H]ours that are excessive, redundant, or otherwise unnecessary" are not reasonable and should not be included in the trial court's assessment of attorneys' fees. *Hensley*, 461 U.S. at 434. That determination is neither easy nor straightforward under the particular circumstances of this case.

{14}  The Court has reviewed the Firm's invoices and finds that, overall, responsibility was fairly allocated without unnecessary duplication of effort or other avoidable inefficiency.

{15}  In its Initial Order, the Court concluded that all of the claims made against Steiner-Crowley are subject to sanctions because there was not a sufficient factual basis to present them. By her motion, Steiner-Crowley contends that this was apparent at the time the Complaint was first filed. It follows that it was apparent to her counsel as well as Plaintiff or its counsel. Yet Steiner-Crowley was

charged an equal share of fees and never moved to dismiss the Complaint or the Amended Complaint under Rule 12(b)(6). While she remained a defendant, Steiner-Crowley was charged a proportionate share of the Firm's fees in discovery, motion practice, and general defense efforts.

{16} As all claims against her are subject to sanctions, allocation of fees between various claims against Steiner-Crowley is not required. However, it does not necessarily follow that she is entitled to recover all attorneys' fees charged to her. Her motion asserts there were *never* any grounds for the claims SEAC alleged against her. (Defs.' Mot. Clarification Req. Oral Arg. ¶¶ 14–16.) Steiner-Crowley should bear some responsibility for not attacking those claims on the pleadings before incurring significant other expense.

{17} Taking all factors into consideration, the Court, in its discretion, concludes that Steiner-Crowley's attorneys' fees should be discounted by fifty percent. Plaintiff is then taxed for her attorneys' fees in the total amount of $9,661.00.

{18} The Court must determine how to allocate attorneys' fees for claims against Robinson and Viall between those claims that are subject to sanctions and those that are not. The sanctions arise from the Court's conclusion that there was not an adequate factual basis to assert a colorable claim that Robinson and Viall, as employees who were not also officers and directors, owed fiduciary duties to Plaintiff. The Court determined that other claims, while perhaps not ultimately meritorious, had a sufficient factual basis so that sanctions are not appropriate for those claims.

{19} The Court does not accept Van Camp's suggestion that one-third of attorneys' fees charged to Robinson and Viall should be allocated to the breach of fiduciary duty and constructive fraud claims. In his second affidavit, Van Camp contends this one-third allocation supports a combined award to Robinson and Viall totaling $16,656.01. (*See* Van Camp Aff., July 8, 2015.)

{20} As an initial matter, the Court concludes that the total attorneys' fees charged to Robinson and Viall for the defense of all claims were reasonable as to

rate, total number of hours charged, and division of efforts among the Firm's lawyers and support staff in light of the claims presented. As to whether claims against Robinson and Viall should have also been attacked by an early motion on the pleadings, defense counsel faced different strategic considerations. Even if counsel believed the motion was strong regarding the claims now subject to sanctions, the strong possibility that other claims would have survived an early dispositive motion justified allowing even the weak claims to survive. There is an obvious factual overlap among the various claims. That same factual overlap requires that the Court give due regard to the principle that Rule 11 only permits sanctions in "the amount of the reasonable expenses incurred *because of the filing of the pleading*." N.C. R. Civ. P. 11 (emphasis added).

{21} Even if the Amended Complaint had not included the breach of fiduciary duty and constructive fraud claims, Robinson and Viall would have incurred attorneys' fees in connection with the other claims, including those resulting from preparing responsive pleadings, attending court proceedings and depositions, addressing issues with service and default, and other necessary efforts reflected in the Firm's invoices during the course of the defense.

{22} Van Camp acknowledges that the attorneys' fees documented in his affidavit "reflect work done on all of the claims[,] not just the claims for Breach of Fiduciary Duty and Constructive Fraud." (Van Camp. Aff. ¶ 10, July 8, 2015.) The Court has reviewed the invoices in detail. Having done so, it concludes that awarding one-third of those total fees would be excessive, as it cannot determine that this amount was incurred solely because the Complaint and Amended Complaint included the breach of fiduciary duty and constructive fraud claims. There is, however, no precise way to determine the appropriate amount to award from the combined effort. The Court, therefore, concludes that it is appropriate to allocate the total fees on a percentage basis to take into account an award

consistent with Rule 11.[1] *See Am. Agri-Brokers v. Phykitt*, No. 1:88-cv-00657 (E.D.N.C. Oct 3, 1991), *cited with approval in Out of the Box Devs.*, 2014 NCBC LEXIS 39, at \*26–28, *and* Noel Allen, *North Carolina Business Practice* § 11.05, at 11-17 (3d ed. 2014).[2]

{23}   Considering all factors, the Court, in its discretion, determines that an appropriate sanction is ten percent of the total attorneys' fees charged to Robinson and Viall, fairly reflecting the time reasonably expended because factually insufficient claims were included in the Complaint and Amended Complaint.  Those amounts are $2,296.40 and $2,723.30 respectively, for Robinson and Viall, for a total of $5,01970.  This amount should be taxed against Plaintiff.  Combined with those fees awarded to Steiner-Crowley, the Court imposes a total sanction of $14,680.70 in attorneys' fees.  The Court also incorporates, from its Initial Order, its finding of costs other than attorneys' fees that should be taxed against Plaintiff.

{24}   The Court now turns to the question of whether these sanctions and costs should be taxed jointly against Plaintiff and its counsel.  In considering whether to sanction counsel, the controlling question is whether counsel "acted with objective reasonableness under the circumstances when [he] signed the pleading in

---

[1] It is significant that Rule 11's purpose is to sanction an inappropriate pleading.  The policy underlying the imposition of sanctions is easily distinguished from the policy underlying the statute that allows for the recovery of attorneys' fees upon the successful pursuit of a claim for which there is a statutory basis for recovering attorneys' fees.  In the latter case, deducting a percentage of attorneys' fees would potentially defeat a plaintiff's ability to receive a full recovery.  Even though there may have been a factual nexus among claims on which plaintiff succeeded and those on which she did not, it might be unfair to deduct attorneys' fees where the plaintiff was required to develop a common factual record in order to recover on any claim.  *See Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 596, 525 S.E.2d 481, 487 (2000) (assessing fees under an award statute and noting that "plaintiff's claims arose from a common nucleus of operative facts" and that apportionment of fees relating to unsuccessful claims was not necessary).  But, the purpose of imposing Rule 11 sanctions is not to assure a full recovery on claims arising from a common factual nucleus.  Rather, the purpose is to sanction conduct and the statutory direction is to sanction only that portion of efforts that would not have been required but for the improper claims.  When it enacted Rule 11, the legislature "never intend[ed] to constrain or discourage counsel from the appropriate, well-reasoned pursuit of a just result for their client." *Grover v. Norris*, 137 N.C. App. 487, 495, 529 S.E.2d 231, 235 (2000).

[2] These sources addressed the award of fees to a successful plaintiff bringing an action under a statute allowing for the recovery of fees, such as section 75-16.1.  The Court has noted that this type of award presents different policy considerations when determining whether to allocate fees.  The sources are useful and instructive, however, in considering possible allocation *methods*.

question." *Lincoln v. Bueche*, 166 N.C. App. 150, 156, 601 S.E.2d 237, 243 (2004) (internal quotation marks omitted) (quoting *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989)). The Complaint was filed in close proximity to the expiration of the statute of limitations for many of the asserted claims. Time pressures alone do not excuse a reasonable inquiry before filing claims, but those time pressures may limit the ability to subject client statements to searching independent scrutiny. Here, Neville testified that he relied on express statements from his clients that Plaintiff's owners had reposed trust and confidence in Steiner-Crowley, Robinson, and Viall of a degree sufficient for the law to impose upon them special fiduciary duties commensurate with that trust.

{25} The Court determined that these client representations were without an adequate factual basis. That finding does not necessarily equate to a conclusion that it was unreasonable for Neville to accept and rely on his client's assertions and proceed to file claims based on them. Clearly, even accepting those client representations as true, the assertion of a fiduciary duty against the Moving Defendants was, at best, at the edge of case law that might arguably support a fiduciary duty arising from the employment responsibilities of an employee who was not also an officer or director. That was particularly so with regard to Steiner-Crowley, and the Court has struggled most with whether Neville had a sufficiently reasoned basis to assert a breach of fiduciary duty claim against her. The Complaint and Amended Complaint allege that Steiner-Crowley served as SEAC's Assistant Charter Sales Manager from November 1, 2005, to February 8, 2008, and in that position was responsible for assisting Robinson with all day-to-day activities of the sales team, assisting Robinson with the maintenance and control of the entry of client contact information into a data system, providing daily support to sales staff in response to client inquiries, assisting with the generation of new business through telemarketing, and assisting to ensure follow-up on lead sales to staff. (Compl. ¶¶ 20, 43–44; Am. Compl. ¶¶ 20, 45–46.) At least during discovery, it became clear that she was subordinate to Defendant Barry Stroud ("Stroud"), SEAC's president. Additionally, Steiner-Crowley ceased working at SEAC before

the occurrence of most of the alleged acts giving rise to claims for conversion, trespass, unjust enrichment, UDTP, fraud, tortious interference, and unauthorized appropriation.

{26}   Where an employee is neither an officer nor a director, extraordinary circumstances are necessary to impose a fiduciary duty arising out of the employment relationship. *See Dalton v. Camp*, 353 N.C. 647, 652, 548 S.E.2d 704, 708 (2001) ("Under the general rule, the relation of employer and employee is not one of those regarded as confidential." (internal quotations and citations omitted)); *Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 2002 NCBC LEXIS 2, *15 (N.C. Super. Ct. July 10, 2002) (noting that management over an entity's day-to-day operation does not, itself, give rise to a fiduciary duty claim). Absent extraordinary circumstances of special relationships of trust and confidence leading to dominion and control, employees who are not also officers and directors should not be put to the burden of defending fiduciary duty claims. Here, it is a close question whether Plaintiff's representations to Neville regarding the nature and character of Steiner-Crowley's position were adequate to form a sufficient factual basis for asserting a fiduciary duty.

{27}   The factual allegations concerning Robinson's and Viall's respective duties come closer to describing a position akin to that of a *de facto* officer. Where an employee exercises sufficient discretionary authority and dominion over her employer, such that the employer becomes "subjugated" to that employee, it is possible that a fiduciary relationship lies. *Tai Sports, Inc. v. Hall*, 2012 NCBC LEXIS 64, *48–49 (N.C. Super. Ct. Dec. 28, 2012).

{28}   Based on his client's assertions, Neville filed a Complaint and Amended Complaint asserting that Viall was Plaintiff's Director of Operations and was responsible for developing policies concerning flight operations; complying with all laws, rules, and regulations governing flight; overseeing and implementing training required by the Federal Aviation Regulations; safely operating all aircraft owned or managed by Plaintiff; ensuring that all aircraft were in compliance with Federal Aviation Administration and company regulations; and ensuring that each

satellite base had a qualified Chief Pilot. (Compl. ¶ 39; Am. Compl. ¶ 41.) Plaintiff pled that Robinson served as Charter Sales Manager and Bookkeeper, responsible for managing "all day to day [sic] activities," maintaining and controlling client contact information, providing daily support to sales staff, generating new business, and ensuring follow-up on leads to sales staff. (Compl. ¶¶ 40–41; Am. Compl. ¶¶ 42–43.) Pursuant to her employment responsibilities, Robinson was privy to confidential client information. (Compl. ¶ 42; Am. Compl. ¶ 44.) These duties and responsibilities provided Neville a stronger basis from which to conclude that Robinson's and Viall's duties were sufficiently expansive to allow a fiduciary duty claim to survive early dismissal. *See Sunbelt Rentals*, 2002 NCBC LEXIS 2, at *17–20.

{29}     As noted in its Initial Order, later deposition testimony from Plaintiff's deposition designee to the effect that Robinson and Viall were "run of the mill" employees who took direction from Stroud (Southeast Air Charter, Inc. 30(b)(6) Dep. Vol. I 226:5–:7) weakened the factual premise on which claims had been asserted. But, for purposes of considering sanctions against counsel, the inquiry concerns Neville's reasonable and good-faith belief at the time the claims were filed based on adequate investigation that facts supporting the claims existed.

{30}     Earlier in the litigation, as part of case management, the Court expressed its concern about the reach of the claims in the Complaint and Amended Complaint, in particular that the claims extended beyond those centrally involved in the underlying alleged factual events. The Court cautioned against proceeding with such claims without an adequate factual basis. Plaintiff proceeded, cognizant of the risk that an award of attorneys' fees may follow. Although the Court does not take imposing sanctions lightly, after a considered and comprehensive review, the Court concludes that limited sanctions are appropriate. However, in its discretion, after considering the entire record, briefs, arguments of counsel, and the policies underlying Rule 11, the Court concludes that these sanctions should be taxed solely against Plaintiff and not against its counsel.

## IV. CONCLUSION

{31}    For the foregoing reasons, as its Final Order, the Court orders that Plaintiff Southeast Air Charter, Inc. shall pay:

1. Defendant Kathleen Steiner-Crowley attorneys' fees in the amount of $9,661.00;

2. Defendant Karen Lee Robinson attorneys' fees in the amount of $2,296.40;

3. Defendant Russell Viall attorneys' fees in the amount of $2,723.30;

4. The Moving Defendants, collectively, taxable costs in the amount of $ 5,182.83.

These amounts shall be paid within thirty days of the date of this Final Order.

IT IS SO ORDERED this the 17th day of August, 2015.


/s/ James L. Gale
_____
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases